IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

STAR INSURANCE COMPANY,
a Michigan company,

                Petitioner,

v.

                                Civil Action No.: __2:24-cv-00363__

TRANSPORT ENTERPRISE LEASING, LLC;
RODNEY LEE JORDAN; DONALD WITHROW;
RYA KOTARSKI; CARRIE ELIZABETH KOTARSKI;
SAVANNAH STAINBACK; ABIGAIL HANCOCK;
JOHN SPRINGER; KATHERINE FOGELBERG;
MERGING EXPRESS, LLC; MILLER FARMS
CUSTOM, LLC; EVERGREEN ENVIRONMENTAL
SPILL RESPONSE COMPANY, INC.; TESLA CARGO
SOLUTIONS, INC.; WALKY OCCEUS; and JASON
DeSANTO,

                Respondents.

## **COMPLAINT FOR DECLARATORY RELIEF**

Petitioner, Star Insurance Company ("Star"), by and through its undersigned counsel, pursuant to Fed. R. Civ. P. 57 and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*., respectfully requests that this Court declare the rights and responsibilities of the parties relative to a contract of insurance.  In support of its request, Star states as follows:

### **GENERAL ALLEGATIONS**

1.      This declaratory judgment action arises as a result of a motor vehicle accident that occurred on April 28, 2023, on 1-77 near East Bank, Kanawha County, West Virginia, (hereinafter referred to as "Accident") when a truck owned by Tesla Cargo Solutions, Inc. ("Tesla") and operated by Walky Occeus ("Occeus") heading southbound on 1-77 struck a median and went over the median causing a multi-vehicle motor vehicle accident involving three passenger vehicles that had all been traveling northbound on 1-77.

2.      At the time of the Accident, a trailer owned by Transport Enterprise Leasing, LLC ("TEL"), Star's insured, was attached to the tractor operated by Occeus.  The 2022 WANC trailer at issue, VIN #1JJV532D5NL312482, was leased by TEL to Merging Express, LLC ("Merging Express") by virtue of a Commercial Equipment Master Lease Agreement ("MLA").  TEL did not enter into a lease with Tesla or Occeus and never gave permission for its trailer to be attached to Tesla's tractor.

3.      Numerous individuals were injured as a result of the Accident and claims have been presented for wrongful death, bodily injury and property damage arising from the Accident.

4.      In this insurance coverage action, Star seeks a judgment declaring that Star Commercial Auto Policy No. CA0952079 ("Commercial Auto Policy)" and Star Commercial Liability Umbrella Policy No. UM0952079 ("Commercial Umbrella Policy") issued to TEL for the policy period of May 1, 2022 to May 1, 2023 do not afford coverage with respect to the claims arising out of the April 28, 2023 Accident.

## THE PARTIES

5.      Petitioner Star is an insurance company organized under the laws of the State of Michigan, with its principal place of business in Michigan.

6.      Respondent Transport Enterprise Leasing, LLC ("TEL") is a foreign entity with its principal place of business in Chattanooga, Tennessee, and with a service of process address of 400 Birmingham Hwy 350, Chattanooga, TN 37419-2346.

7.      Upon information and belief, Respondent Rodney Lee Jordan is an adult male, with a last known address of 151 Robin Road, Elkview, WV 25985.  Mr. Jordan was a back seat passenger in his own 2023 GMC Sierra pickup that was being driven by Hans Robinson at the time of the Accident.

8.      Upon information and belief, Respondent Donald Withrow is an adult male, with a last known address of 75 Foxborough Lane, Charleston, WV 25302.  Mr. Withrow was a front seat passenger in the 2023 GMC Sierra that was being driven by Hans Robinson at the time of the Accident.

9.      Upon information and belief, Respondent Rya Kotarski is an adult female, with a last known address of 107 West Cabarrus Street, Stanfield, NC 28163.  Ms. Kotarski was driving a 2007 Honda Civic that was owned by Carrie Elizabeth Kotarski at the time of the Accident.

10.      Upon information and belief, Respondent Carrie Elizabeth Kotarski is an adult female, with a last known address of 107 West Cabarrus Street, Stanfield, NC 28163.  Ms. Kotarski was the owner of the 2007 Honda Civic that was being driven by Rya Kotarski at the time of the Accident.

11.      Upon information and belief, Respondent Savannah Stainback is an adult female, with a last known address of 1005 Basin Court, Indian Trail, NC 28079.  Ms. Stainback was a front seat passenger in the 2007 Honda Civic that was being driven by Rya Kotarski at the time of the Accident.

12.      Upon information and belief, Respondent Abigail Hancock is an adult female, with a last known address of 3013 Fallondale Road, Waxhaw, NC 28173.  Ms. Hancock was a back seat passenger in the 2007 Honda Civic that was being driven by Rya Kotarski at the time of the Accident.

13.      Upon information and belief, Respondent John Springer is an adult male, with a last known address of 100 Kinloch Drive, Blacksburg, VA 24060.  Mr. Springer was the owner and operator of a 2022 Volkswagen GTI at the time of the Accident.

14.      Upon information and belief, Respondent Katherine Fogelberg is an adult female, with a last known address of 100 Kinloch Drive, Blacksburg, VA 24060.  Ms. Fogelberg was a

3

front seat passenger in the 2022 Volkswagen GTI operated by John Springer at the time of the Accident.

15. Upon information and belief, Respondent Merging Express, LLC is a foreign entity with its current principal place of business in Joliet, Illinois, and with a service of process address of 745 McClintock Drive, Suite 150, Burr Ridge, IL 60527-0866. Merging Express, LLC was the lessor of the trailer that was attached to the tractor being driven by Walky Occeus at the time of the Accident.

16. Upon information and belief, Respondent Miller Farms Custom, LLC is a foreign entity with its principal place of business in Valley City, Ohio, and with a service of process address of 7812 West Law Road, Valley City, OH 44280. Miller Farms Custom, LLC was the owner of the cargo on the trailer that was attached to the tractor being driven by Walky Occeus at the time of the Accident.

17. Upon information and belief, Respondent Evergreen Environmental Spill Response Company, Inc. ("Evergreen") is a domestic corporation, with its principal office located in Shady Spring, West Virginia, and with a service of process address of P. O. Box 1090, Oceana, WV 24870. Evergreen has asserted a claim for clean-up costs related to the subject Accident.

18. Upon information and belief, Respondent Tesla Cargo Solutions, Inc. is a foreign corporation with a principal place of business in Naperville, Illinois, and with a service of process address of 1008 N. Columbia Street, Naperville, IL 60563-2876. Tesla was the owner of the tractor being driven by Occeus at the time of the Accident.

19. Upon information and belief, Respondent Walky Occeus is an adult male, with a last known address of 4629 Poseidon Place, Lake Worth, FL 33463-7251. Occeus was the operator of the tractor owned by Tesla involved in the Accident.

20. Upon information and belief, Respondent Jason DeSanto is an adult male, with a last known address of 15240 S. MacKenzie, Homer Glen, IL 60491 and, at times relevant herein, was the President/Owner of Merging Express and a personal guarantor on the MLA and Equipment Schedule.

## JURISDICTION AND VENUE

21. Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332, because complete diversity of citizenship exists among the parties in the Complaint, and the amount in controversy exceeds $75,000.

22. This Court has jurisdiction to enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, and Fed. R. Civ. P. 57.

23. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the dispute occurred in this District.

## FACTS

**I.    The Accident**

24. Based on the information contained in the Uniform Traffic Crash Report, report number WVSP23-1726 on April 28, 2023 an accident occurred when a truck owned by Tesla and operated by Walky Occeus heading southbound on Interstate 77 allegedly struck a median and went over the median causing a motor vehicle accident involving three passenger vehicles ("claimants") that had all been traveling northbound on Interstate 77.

25. Various individuals/entities have presented claims, including wrongful death, bodily injury, property damage and clean up claims as a result of the Accident.

## II.    The Policies

### A.    The Commercial Auto Policy

26.    Star issued Policy No. CA0952079 to Transport Enterprise Leasing LLC (per named insured extension) with a policy period of May 1, 2022 to May 1, 2023 (hereinafter referred to as "Auto Policy").  The Auto Policy has a policy limit of $1,000,000.  A true and correct copy of the Commercial Auto Policy is attached hereto as *Exhibit A*.

27.    The Auto Policy Insuring Agreement provides, in pertinent part, as follows:

**Auto Dealers Coverage Form (CA 00 25 11 20)**

**Section 1 – Covered Autos Coverage**
**D. Covered Autos Liability Coverage**

**1. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos".  However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense".  However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply.  We may investigate and settle any claim or "suit" as we consider appropriate.  Our duty to defend or settle ends when the Covered "Autos" Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

*See Commercial Auto Policy, Exhibit A, pp. A-049 - A-050.*

6

28.    The Auto Policy defines who is an insured as follows:

**2. Who Is An Insured**

The following are "insureds" for covered "autos":
a. You for any covered "auto".
b. Anyone else while using with your permission a covered "auto" you own, hire
or borrow except:
(1) The owner or anyone else from whom you hire or borrow a covered "auto".

This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

*See Commercial Auto Policy, Exhibit A, p. A-50.*

29.    The Auto Policy includes the following exclusionary language, as provided in

pertinent part:

**4. Exclusions**

This insurance does not apply to any of the following:

* * * *

g. Leased Autos

Any covered "auto" while leased or rented to others.  But this exclusion does not apply to a covered "auto" you rent to one of your customers while their "auto" is left with you for service or repair.

*See Commercial Auto Policy, Exhibit A, p. A-051.*

30.    Section IV of the Auto Policy contain Conditions, in relevant part:

**SECTION IV - CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

* * * *

2. Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions

We have no duty to provide coverage under this Policy unless there has been full compliance with the following duties:

a. In the event of "accident", claim, "suit", offense, "loss" or "act, error or omission", you must give us or our authorized representative prompt notice of the "accident", offense, "loss" or "act, error or omission".  Include:
(1) How, when and where the "accident", offense, "loss" or "act, error or omission" occurred;
(2) What the "act, error or omission" was;
(3) The "insured's" name and address;
(4) To the extent possible, the names and addresses of:
(a) Any injured persons and witnesses; or
(b) Anyone who may suffer damages as a result of an "act, error or omission".

b. Additionally, you and any other involved "insured" must:
(1) Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.
(2) Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".
(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit".
(4) Authorize us to obtain medical records or other pertinent information.
(5) Submit to examination at our expense, by physicians of our choice, as often as we reasonably require.
(6) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of an "act, error or omission" to which this insurance may also apply.

c. If there is "loss" to a covered "auto" or its equipment, you must also do the following:
(1) Promptly notify the police if the covered "auto" or any of its equipment is stolen.
(2) Take all reasonable steps to protect the covered "auto" from further damage.
Also keep a record of your expenses for consideration in the settlement of the claim.
(3) Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.
(4) Agree to examinations under oath at our request and give us a signed statement of your answers.

*See Commercial Auto Policy, Exhibit A, p. A-070.*

31.     The Auto Policy defines "auto" to mean "a land motor vehicle, "trailer" or semitrailer."  *See Commercial Auto Policy, Exhibit A, p. A-073.*

32.    The Auto Policy contains a Punitive Damages Exclusion Endorsement:

**PUNITIVE DAMAGES EXCLUSION**

This endorsement modifies insurance provided under the following:

**AUTO DEALERS COVERAGE FORM**
**BUSINESS AUTO COVERAGE FORM**
**MOTOR CARRIER COVERAGE FORM**

A. The following is added to Exclusions under Section 1- Covered Autos Coverages and Section 11- General Liability Coverages, Paragraphs A. Bodily Injury And Property Damage Liability and 8. Personal And Advertising Injury Liability of the Auto Dealers Coverage Form:

This insurance does not apply to any claim of, or indemnification for:

1. Punitive damages, exemplary damages or aggravating circumstances damages, whether arising out of the acts of an insured, insured's employees or any other person;
2. Fines, penalties or sanctions imposed by law; or
3. Any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages imposed upon the insured.

B. The following is added to B. Exclusions under Section II - Covered Autos Liability Coverage of the Business Auto Coverage Form and Motor Carrier Coverage Form:

This insurance does not apply to any claim of, or indemnification for:

1. Punitive damages, exemplary damages or aggravating circumstances damages, whether arising out of the acts of an insured, insured's employees or any other person;
2. Fines, penalties or sanctions imposed by law; or
3. Any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages imposed upon the insured.

All other policy terms, conditions, definitions and exclusions remain unchanged.

*See Commercial Auto Policy, Exhibit A, p. A-081.*

33.    The Auto Policy contains changes for an "auto" licensed in, or "auto dealers operations" conducted in Tennessee:

**TENNESSEE CHANGES**

For a covered "auto" licensed in, or "auto dealer operations" conducted in, Tennessee, this endorsement modifies insurance provided under the following:

**AUTO DEALERS COVERAGE FORM**
**BUSINESS AUTO COVERAGE FORM**
**MOTOR CARRIER COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.
A. Changes In Covered Autos Liability Coverage Paragraph 2.b.(4) of the Who Is An Insured provision of the Auto Dealers Coverage Form does not apply.
B. Changes In Conditions
1. The following replaces the lead-in paragraph to the Duties In The Event Of Accident, Claim, Suit Or Loss Condition in the Business Auto and Motor Carrier Coverage Forms and the Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions Condition in the Auto Dealers Coverage Form:

We have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us:

*See Commercial Auto Policy, Exhibit A, p. A-128.*

**B.      The Commercial Umbrella Policy**

34.     Star issued a Commercial Liability Umbrella Policy bearing Policy No. UM0952079 with a policy period of May 1, 2022 to May 1, 2023 (hereinafter referred to as "Umbrella Policy"). The Umbrella Policy has limits of $5,000,000. The Umbrella Policy lists the Star Auto Policy CA0952079 as Underlying Insurance for auto liability. There is a $10,000 Self Insured Retention on this Policy. A true and correct copy of the Umbrella Policy is attached hereto as *Exhibit B*.

35.     The Umbrella Coverage Form CU 00 01 04 13, Insuring Agreement provides, in pertinent part:

10

**SECTION I - COVERAGES**
**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**
a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit" for which we have the duty to defend.

But:
(1) The amount we will pay for the "ultimate net loss" is limited as described in Section III - Limits Of Insurance; and
(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

b. This insurance applies to "bodily injury" or "property damage" that is subject to an applicable "retained limit".  If any other limit, such as a sublimit, is specified in the "underlying insurance", this insurance does not apply to "bodily injury" or "property damage" arising out of that exposure unless that limit is specified in the Declarations under the Schedule of "underlying insurance".

*See Umbrella Policy, Exhibit B, p. B-034.*

36.    The Umbrella Policy includes the following exclusionary language, as provided in pertinent part:

**2.  Exclusions**
This insurance does not apply to:

* * * *

f. Auto Coverages
(1) "Bodily injury" or "property damage" arising out of the ownership, maintenance or use of any "auto" which is not a "covered auto"; or
(2) Any loss, cost or expense payable under or resulting from any first-party physical damage coverage; no-fault law; personal injury protection or auto medical payments coverage; or uninsured or underinsured motorist law.

*See Umbrella Policy, Exhibit B, p. B-036.*

37.     Section II of the Umbrella Policy defines Who is An Insured:

**\* \* \* \***

2.  Only with respect to liability arising out of the ownership, maintenance or use of "covered autos":
a. You are an insured.
b. Anyone else while using with your permission a "covered auto" you own, hire or borrow is also an insured except:
> (1) The owner or anyone else from whom you hire or borrow a "covered auto". This exception does not apply if the "covered auto" is a trailer or semitrailer connected to a "covered auto" you own.
> (2) Your "employee" if the "covered auto" is owned by that "employee" or a member of his or her household.
> (3) Someone using a "covered auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.
> (4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a "covered auto".
> (5) A partner (if you are a partnership), or a member (if you are a limited liability company) for a "covered auto" owned by him or her or a member of his or her household.
> (6) "Employees" with respect to "bodily injury" to:
> > (a) Any fellow "employee" of the insured arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or
> > (b) The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph (a) above.
c. Anyone liable for the conduct of an insured described above is also an insured, but only to the extent of that liability.
3. Any additional insured under any policy of "underlying insurance" will automatically be an insured under this insurance.

*See Umbrella Policy, Exhibit B, p. B-044.*

12

38.    Section III of the Umbrella Policy addresses the Limits of Insurance, in relevant part:

**SECTION III - LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:
a. Insureds;
b. Claims made, "suits" brought, or number of vehicles involved; or
c. Persons or organizations making claims or bringing "suits".

2. The Aggregate Limit is the most we will pay for the sum of all "ultimate net loss" under:
a. Coverage A, except "ultimate net loss" because of "bodily injury" or "property damage" arising out of the ownership, maintenance or use of a "covered auto"; and
b. Coverage B.

*See Umbrella Policy, Exhibit B, p. B-045.*

39.    Section IV of the Umbrella Policy sets forth Conditions, in relevant part:

**SECTION IV – CONDITIONS**

3. Duties In The Event Of Occurrence, Offense, Claim Or Suit
a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense, regardless of the amount, which may result in a claim. To the extent possible, notice should include:
(1) How, when and where the "occurrence" or offense took place;
(2) The names and addresses of any injured persons and witnesses; and
(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.
b. If a claim is made or "suit" is brought against any insured, you must:
(1) Immediately record the specifics of the claim or "suit" and the date received; and
(2) Notify us as soon as practicable.
You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
c. You and any other involved insured must:
(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
(2) Authorize us to obtain records and other information;
(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

13

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

*See Umbrella Policy, Exhibit B, pp. B-045 - B-046.*

40.    The Umbrella Policy also addresses Other Insurance, in pertinent part,

**5. Other Insurance**
a. This insurance is excess over, and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Coverage Part.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit".  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

b. When this insurance is excess over other insurance, we will pay only our share of the "ultimate net loss" that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of the insurance provided under this Coverage Part; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

*See Umbrella Policy, Exhibit B, p. B-046.*

41.    The Umbrella Policy contains the following definitions related to the insuring agreement:

**Section V – Definitions**

* * * *

2.  Auto means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

\* \* \* \*

5. "Covered auto" means only those "autos" to which "underlying insurance" applies.

*See Umbrella Policy, Exhibit B, p. B-048.*

\* \* \* \*

19. "Retained limit" means the available limits of "underlying insurance" scheduled in the Declarations or the "self-insured retention", whichever applies.

20. "Self-insured retention" means the dollar amount listed in the Declarations that will be paid by the insured before this insurance becomes applicable only with respect to "occurrences" or offenses not covered by the "underlying insurance".  The "self insured retention" does not apply to "occurrences" or offenses which would have been covered by "underlying insurance" but for the exhaustion of applicable limits.

*See Umbrella Policy, Exhibit B, p. B-050.*

\* \* \* \*

23. "Ultimate net loss" means the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent.

24. "Underlying insurance" means any policies of insurance listed in the Declarations under the Schedule of "underlying insurance".

25. "Underlying insurer" means any insurer who provides any policy of insurance listed in the Schedule of "underlying insurance".

*See Umbrella Policy, Exhibit B, p. B-051.*

42.    The Umbrella Policy contains a Punitive Damages Exclusion Endorsement:

**PUNITIVE DAMAGES EXCLUSION**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM**
**LIQUOR LIABILITY COVERAGE FORM**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**
**PROFESSIONAL LIABILITY COVERAGE FORM**

The following is added to Exclusions:
This insurance does not apply to any claim of, or indemnification for:
1. Punitive damages, exemplary damages or aggravating circumstances damages, whether arising out of the acts of an insured, insured's employees or any other person or entity;
2. Fines, penalties or sanctions imposed by law; or
3. Any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.

*See Umbrella Policy, Exhibit B, p. B-021.*

### III.   Pending Civil Actions

43.    On or about November 2, 2023, Ace Property & Casualty Insurance Company ("ACE") filed an Interpleader Action in the Circuit Court of Kanawha County, West Virginia, bearing Civil Action No. 23-P-447.  TEL was named as a Respondent in this action.

44.    ACE insured Tesla and Occeus for liability under policy number MCC HO8475969 with a policy limit of $1 Million and has effectively conceded that it is responsible for the limits of its policy, arising out of the April 28, 2023 Accident.  ACE offered its $1 million to be distributed among the Respondents and all other claimants or potential claimants for damages incurred as a result of the accident.  By Order dated March 21, 2024, the Court granted ACE's Petition and permitted ACE to pay the $1 million policy limits into the Court.

45.    Per the Court's Order, upon payment, ACE will be released from any other further obligation and contractual duties under Policy MCC HO8475969.  The Order further provided that if the Respondents are unable to agree on the distribution of the proceeds paid into Court, the Respondents who have appeared in this action shall have the opportunity to litigate among themselves their entitlement to the interplead funds and they shall be enjoined from making any further claims against the ACE Policy.[1]

---

[1] Merging Express failed to appear in the Interpleader Action despite being served with the Petition.  Per the Court's Order, as Merging Express failed to appear in the action, it is prohibited from asserting any claim to the proceeds.  By separate Order, entered on April 5, 2024, Merging Express was ordered to identify

16

46.    In addition to the Interpleader Action there are currently four civil actions pending as a result of the April 28, 2023 Accident.  The civil actions are identified as follows: *Amy Young, as Administratrix of the Estate of Hans Robinson, Plaintiff v. Tesla Cargo Solutions, Inc. and Walky Occeus, Defendants*, Civil Action No. 2:23-cv-00685, pending in the United States District Court for the Southern District of West Virginia – Charleston Division; *Rodney Jordan, Plaintiff v. Walky Occeus and Tesla Cargo Solutions, Inc., Defendants*, Civil Action No. 2:23-cv-00711 pending in the United States District Court for the Southern District of West Virginia – Charleston Division; *Abigail Hancock, Plaintiff v. Walky Occeus and Tesla Cargo Solutions, Inc., Defendants*, Civil Action No. 24-C-400, pending in the Circuit Court of Kanawha County, West Virginia; and *Savannah Stainback, Plaintiff v. Walky Occeus and Tesla Cargo Solutions, Inc., Defendants,* Civil Action No. 24-C-401, pending in the Circuit Court of Kanawha County, West Virginia.

47.    In addition to the above, on May 10, 2024, Amy Young, as Administratrix of the Estate of Hans Robinson, filed a Petition for Declaratory Judgment against Star Insurance Company in the United States District Court for the Southern District of West Virginia, bearing Civil Action No. 224-cv-00240.  Star filed a Counter Petition in that action.

## IV.    Commercial Equipment Master Lease Agreement

48.    At the time of the Accident, a trailer owned by TEL, Star's insured, was attached to the tractor operated by Occeus.  The 2022 WANC trailer at issue, VIN #1JJV532D5NL312482, was leased by TEL to Merging Express, LLC ("Merging Express") by virtue of a Commercial Equipment Master Lease Agreement ("MLA").  A true and correct copy of the MLA is attached hereto as *Exhibit C*.

---

and produce within 30 days of the Order any and all insurance policies it had at the time of the April 28, 2023 collision which provided any type of liability coverage for the trailer involved in the collision.

49.    TEL is identified as the Lessor and Merging Express is identified as the Lessee in the February 1, 2020 MLA.

50.    As noted within the MLA, each lease contract will be evidenced by an equipment schedule executed by Lessor and Lessee that explicitly incorporates the provisions of the MLA. Equipment Schedule 16, dated February 19, 2021, lists the 2022 WANC Trailer (VIN #1JJV532D5NL312482).  A true and correct copy of the Equipment Schedule is attached hereto as *Exhibit D*.

51.    There is an Indemnity Provision within the February 1, 2020 MLA.  Paragraph 19 of the MLA entitled "INDEMNIFICATION" provides:

> Lessee shall defend, indemnify and hold harmless Lessor, its parent, subsidiary and affiliated companies and its and their officers and employees, successors and assigns from and against any and all damages, loss, theft, or destruction of any Equipment and against all losses, liabilities, damages, injuries (including bodily injury or death), claims, demands, costs and expenses of every kind and nature, including legal fees and disbursements arising out of directly or indirectly from or in connection with the Lessee's possession, use, maintenance, repair, operation or condition (whether defects are latent or discoverable by Lessor or by Lessee) of the Equipment during the Term of this Master Lease, including, without limitation, actions for negligence or strict liability under the laws or judicial decisions of any state or the United States, and legal expenses in defending any claim brought to enforce any such liability or expense. Lessee agrees to give Lessor prompt notice of any claim or liability hereby indemnified against.  Lessee's indemnification obligations as described herein shall survive termination or expiration of this Master Lease.

*See MLA, Exhibit C.*

52.    The MLA contains additional provisions that are pertinent to the issues herein:

13) Operation

(c) Lessee shall notify lessor immediately of any and all accidents involving or material damage occurring to the Equipment.  Lessee shall keep Lessor and the insurer fully informed of all claims, suits or proceedings arising out of any accident or damage occurrence involving the Equipment.  Lessee shall forward to the insurer and to Lessor a copy of every demand, notice,

summons or other process received in connection with any and all claims, suits or other legal proceedings relating to an accident or damage occurrence involving the Equipment.

14) Insurance, Duty to Cooperate, Assignment of Insurance Proceeds, Attorney in Fact

a) Lessee shall procure and maintain at its own expense i) commercial automobile liability insurance insuring against liability for bodily injury and property damage with a minimum coverage limit of one million dollars ($1,000,000) combined single limit or in an amount required by state or federal government now or in the future which may exceed the stated minimum coverage, and ii) physical damage insurance insuring against loss or damage to the Equipment in an amount not less than the full replacement value of the Equipment and with a deductible satisfactory to Lessor. Lessee shall furnish Lessor with a certificate of insurance evidencing the issuance of policies to Lessee in at least the minimum amounts required. Lessee shall list Lessor as an additional insured thereunder for the liability coverage and Lessor (or such party as designated by Lessor) as a loss payee for the physical damage coverage. Lessee shall be responsible for the payment of the premium for all such insurance required. Each such policy shall be in such form and with such insurers as may be satisfactory to Lessor, and shall contain a clause requiring the insurer to give to Lessor at least thirty (30) days prior written notice of any alteration in the terms of such policy or the cancellation thereof, and a clause specifying that no action or misrepresentation by Lessee shall invalidate such policy. All insurance shall be primary, without right of contribution from any other insurance carried by Lessor, shall contain waiver of subrogation and "breach of warranty" provisions satisfactory to Lessor, shall provide that all amounts payable by reason of loss or damage to the Unit shall be payable solely to Lessor, unless Lessor otherwise agrees, and shall contain such other endorsements as Lessor may reasonably require. Lessor shall be under no duty to ascertain the existence of or to examine any such policy or to advise Lessee in the event any such policy does not comply with the requirement hereof.

b) Lessee shall pay any deductible and any amounts not covered by insurance payments for damages, loss, or theft to/of the Equipment and for any claims and causes of action arising from the use and operation of the Equipment during the Term.

c) Lessee, its employees and/or its agents, shall comply with all terms and conditions of insurance policies covering the Equipment. All claims, (including bodily injury, property damage, or vehicle damage) are to be reported immediately to both the Lessor and the applicable insurance company. Lessee agrees that it has a duty to cooperate the insurance company(ies) that issued the policy(ies) relative to the Equipment and in the event of loss or damage to the Equipment, Lessee shall within one (1)

19

business day of the event of such a loss or damage, report in person, by telephone or by email, such loss or damage to the Lessor, to the insurance company(ies) that insured the policy(ies), and to any and all applicable governmental agencies. Lessee shall furnish such information and execute such document(s) as may be require and necessary to collect the proceeds from the insurance policy(ies).

*See MLA, Exhibit C.*

53.     There is also an Agreement to Provide Insurance signed by Jason DeSanto on 2/19/21 and attached to the Equipment Lease Schedule which requires Merging Express to provide liability insurance for the minimum DOT requirement of $1,000,000 (or in an amount required by state or federal government now or in the future which may exceed the stated minimum coverage). The Agreement to Provide Insurance also required Transport Enterprise Leasing, LLC to be named and listed as an Additional Insured on the Merging Express Policy.

54.     There is a Personal Guaranty Addendum, as well as a Corporate Guaranty Addendum, attached to the Equipment Schedule.  Both of these documents were executed by Jason DeSanto.  Each Guaranty specifically provides an absolute, unconditional, and irrevocable guarantee of full and punctual payment of any Indebtedness of Lessee to Lessor.

55.     Subsequent to the MLA with TEL, Merging Express entered into an Equipment Rental Agreement dated March 9, 2023 pertaining to the trailer (VIN #1JJV532D5NL312482) with Tesla.  TEL was unaware of this Agreement.  The terms of the Agreement require Tesla to maintain liability insurance in the amount of $1,000,000 and name Merging Express, LLC as an additional insured for bodily injury and property damage.

## COUNT I

### (For a Declaration Coverage is Excluded Under the Auto Policy based upon the Leased Auto Exclusion)

56.     Star repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

20

57.     The Leased Auto Exclusion of the Auto Policy bars coverage to, "[a]ny covered "auto" while leased or rented to others.  But this exclusion does not apply to a covered "auto" you rent to one of your customers while their "auto" is left with you for service or repair." *See Commercial Auto Policy, Exhibit A, A-051.*

58.     The 2022 WANC trailer was leased to Merging Express, LLC at the time of the accident.

59.     By reason of the foregoing, Star is entitled to a declaration that the 2022 WANC trailer is excluded from coverage under the Auto Policy.

## COUNT II

**(For a Declaration Tesla and Occeus Are Not Insureds Under the Auto Policy)**

60.     Star repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

61.     The Auto Policy identifies certain individuals who are insureds for covered autos, including "b. Anyone else while using with your permission a covered 'auto' you own, hire or borrow except: (1) The owner or anyone else from whom you hire or borrow a covered 'auto.'" *See Commercial Auto Policy, Exhibit A, p. A-050.*

62.     TEL was unaware of an Equipment Rental Agreement dated March 9, 2023, pertaining to the 2022 WANC trailer (VIN #1JJV532D5NL312482) between Merging Express and Tesla.  TEL did not give Tesla or Occeus permission to use its trailer.

63.     Because neither Tesla, nor Occeus had permission from TEL to use the trailer, neither Tesla, nor Occeus, are insureds under the Auto Policy and Star has no duty to defend and/or indemnify Tesla or Occeus with respect to the claims and suits asserted against them.

## COUNT III

### (For a Declaration Coverage is Excluded Under the Umbrella Policy based upon the Auto Exclusion)

64. Star repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

65. The Auto Coverages Exclusion of the Umbrella Policy bars coverage for "(1) "Bodily injury" or "property damage" arising out of the ownership, maintenance or use of any "auto" which is not a "covered auto"; or (2) Any loss, cost or expense payable under or resulting from any first-party physical damage coverage; no-fault law; personal injury protection or auto medical payments coverage; or uninsured or underinsured motorist law."
*See Umbrella Policy, Exhibit B, p. B-036.*

66. "Covered auto" is defined in the Umbrella Policy as only those "autos" to which "underlying insurance" applies." *See Umbrella Policy, Exhibit B, p. B-048.*

67. As the 2022 WANC trailer is not a "covered auto" as defined within the Umbrella Policy, because it is excluded from coverage in the underlying insurance, there is no coverage for the trailer in the Umbrella Policy.

68. By reason of the foregoing, Star is entitled to a declaration that coverage is excluded under the Umbrella Policy.

## COUNT IV

### (For a Declaration Tesla and Occeus Are Not Insureds Under the Umbrella Policy)

69. Star repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

70. The Umbrella Policy identifies certain individuals who are insureds for covered autos, including "b. Anyone else while using with your permission a covered 'auto' you own, hire or borrow except: …'" *See Umbrella Policy, Exhibit B, p. B-044.*

71. TEL was unaware of an Equipment Rental Agreement dated March 9, 2023, pertaining to the 2022 WANC trailer (VIN #1JJV532D5NL312482) between Merging Express and Tesla. TEL did not give Tesla or Occeus permission to use its trailer.

72. Because neither Tesla, nor Occeus had permission from TEL to use the trailer, neither Tesla, nor Occeus, are insureds under the Umbrella Policy, Star has no duty to defend and/or indemnify Tesla or Occeus with respect to the claims and suits asserted against them.

## COUNT V

**(For a Declaration that Punitive Damages are Excluded Under the Punitive Damages Exclusion of the Auto Policy and the Umbrella Policy)**

73. Star repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

74. The Star Auto Policy and Umbrella Policy each contain a Punitive Damages Exclusion. Per the Exclusion, punitive damages are excluded whether arising out of the acts of the insured or any other person. *See Punitive Damages Exclusion in Commercial Auto Policy, Exhibit A, p. A-081, and in Umbrella Policy, Exhibit B, p. B-021.*

75. Punitive Damages are sought against defendants in the civil actions identified as follows*: Amy Young, as Administratrix of the Estate of Hans Robinson, Plaintiff v. Tesla Cargo Solutions, Inc. and Walky Occeus, Defendants*, Civil Action No. 2:23-cv-00685, pending in the United States District Court for the Southern District of West Virginia – Charleston Division; *Rodney Jordan, Plaintiff v. Walky Occeus and Tesla Cargo Solutions, Inc., Defendants*, Civil Action No. 2:23-cv-00711 pending in the United States District Court for the Southern District of West Virginia – Charleston Division.

76. By reason of the foregoing, Star is entitled to a declaration that punitive damages are excluded under the Auto Policy and the Umbrella Policy.

23

**COUNT VI**

**(For a Declaration that Coverage is Not Available Under the Auto Policy and the Umbrella Policy for Failure to Comply with Conditions of the Policies)**

77.    Star repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

78.    The Star Auto Policy and Umbrella Policy each contain a Section Entitled "Conditions."  Along with the Common Policy Conditions, the Auto Policy and the Umbrella Policy identify certain Duties in the Event of Accident, Claim, Offense, Suit, Loss or Acts, Errors or Omissions.

79.    Per the Tennessee Changes of the Auto Policy, Star has no duty to provide coverage under the policy if the failure to comply with the notice provision is prejudicial to it.  Included within the Notice Provision, "in the event of an "accident", claim, "suit", offense, "loss" or "act, error or omission", you must give us or our authorized representative prompt notice of the "accident", offense, "loss" or "act, error or omission"."  *See Commercial Auto Policy, Tennessee Changes, Exhibit A, p. A-128.*

80.    Per the Umbrella Policy, Star must be notified as soon as practicable of an "occurrence" or an offense, regardless of the amount, which may result in a claim.  If a claim is made or "suit" is brought against any insured, Star must be notified as soon as practicable.  *See Umbrella Policy, Section IV – Conditions, Exhibit B, p. B-045.*

81.    Star was not notified of the April 28, 2023 Accident and claims resulting therefrom until April 2024 when it received a letter from counsel for the estate of one of the passengers killed in the April 28, 2023 accident.

82.    By reason of the foregoing, Star is entitled to a declaration that the Conditions of the Policies were not met and coverage is not available under the Auto Policy and the Umbrella Policy.

## COUNT VII

### (Equitable Subrogation against Merging Express, LLC and Jason DeSanto)

83.    Star repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

84.    Per the Umbrella Policy, TEL's rights to recover all or part of any payment made by Star are transferred to Star.  Specifically, Section IV - Conditions, ¶ 9 states:

> **9. Transfer Of Rights Of Recovery Against Others To Us**
> If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them.  At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

*See Umbrella Policy, Exhibit B, p. B-046.*

85.    Jason DeSanto executed a Corporate Guaranty Addendum and a Personal Guaranty Addendum providing absolute, unconditional, and irrevocable guarantees of full and punctual payment of any Indebtedness of Merging Express to TEL.

86.    Accordingly, should Star be required to make any payment under the Umbrella Policy, Star is entitled to recover any payments made, including, but not limited to defense and indemnity, from Merging Express and/or Jason DeSanto.

**WHEREFORE,** Star prays that judgment be entered in its favor and against the Respondents as follows:

1.    Declaring that 2022 WANC trailer is excluded from coverage under the Auto Policy.

2.    Declaring that neither Tesla, nor Occeus, are insureds under the Auto Policy and Star has no duty to defend and/or indemnify Tesla or Occeus with respect to the claims and suits asserted against them.

3. Declaring that coverage is excluded under the Umbrella Policy based upon the Auto Exclusion.

4. Declaring that neither Tesla, nor Occeus, are insureds under the Umbrella Policy and Star has no duty to defend and/or indemnify Tesla or Occeus with respect to the claims and suits asserted against them.

5. Declaring that punitive damages are excluded under the Auto Policy and the Umbrella Policy.

6. Declaring that the Conditions of the Policies were not met, and coverage is not available under the Auto Policy and the Umbrella Policy.

7. Declaring that Star is entitled to equitable subrogation from Merging Express and/or Jason DeSanto, should Star be required to make any payment under the Umbrella Policy, including any payments made for defense and/or indemnity.

8. Awarding Star such additional relief as the Court deems appropriate.

Dated the 18th day of July, 2024.

Petitioner, STAR INSURANCE COMPANY,
By Counsel:

/s/ Debra Tedeschi Varner

Debra Tedeschi Varner (WV State Bar #6501)
 dtvarner@vv-wvlaw.com
Jeffrey D. Van Volkenburg (WV State Bar #10227)
 jdvanvolkenburg@vv-wvlaw.com

Varner & Van Volkenburg, PLLC
360 Washington Avenue
Clarksburg, WV 26301
Tel: (304) 918-2840 / Fax: (304) 362-0124

26