**EXHIBIT C**



## COMMERCIAL EQUIPMENT MASTER LEASE AGREEMENT

| **"Lessor":** | Transport Enterprise Leasing, LLC | **"Lessee":** | Merging Express, LLC |
|---|---|---|---|
| Address: | 400 Birmingham Highway | Address: | 109 W South Frontage Road |
| | Chattanooga, TN 37419 | | Bolingbrook. IL 60440 |
| Phone: | (423) 463-3394 | Phone: | (708) 745-2829 |
| Fax: | (423) 822-9735 | Fax: | |

This Master Commercial Equipment Master Lease ("Master Lease"), made and entered into  02/01/2020 , provides a set of terms and conditions that the parties hereto intend to be applicable to various transactions for the lease of certain equipment, including trucks and trailers, and associated accessories and attachments (the "Equipment"), from time to time during the term hereof. Each lease contract will be evidenced by an equipment schedule (the "Equipment Schedule") executed by Lessor and Lessee that explicitly incorporates the provisions of this Master Lease and sets forth specific terms of that particular lease contract, including but not limited to the year, make, model, and vehicle identification number(s) of the equipment covered thereby. Where the provision of a Schedule conflicts with the terms this Master Lease, the provisions of the Equipment Schedule shall prevail. Each Schedule shall constitute a complete and separate lease agreement, independent of all other Schedules, and without any requirement of being accompanied by an originally executed copy of this Master Lease. The term "Lease", when used herein, shall refer to this Master Lease and all Schedules.

One original or electronic copy of each Schedule shall be retained by Lessor. The initial Equipment Schedule shall be identified as Schedule 1 to Master Lease Agreement No. 101182  Any additional Schedules shall be identified by the next sequential number.

### 1) LEASE OF EQUIPMENT

a) Lessor hereby agrees to lease to Lessee and Lessee hereby agrees to lease from Lessor, from time to time during the term of this Master Lease, the Equipment identified and described in any Equipment Schedule upon the review of Lessee's credit and other such matters as Lessor determines relevant, in its absolute discretion, and only if it approves a proposed lease transaction as evidenced by Lessor's execution of a proposed Equipment Schedule.

b) Lessee agrees to accept delivery of each of the Equipment covered by an Equipment Schedule fully executed by Lessee and Lessor. Lessee's lease of any Equipment shall take effect on the terms and conditions specified in this Master Lease and the Equipment Schedule(s) executed in connection with such Equipment immediately upon delivery of each piece of Equipment by Lessor or its designated agent to Lessee or its designated agent ("Delivery Date"). The failure to execute an Equipment Schedule with respect to any Equipment shall not affect Lessee's obligations to pay rent and other amounts under this Master Lease or comply with all of the other terms and conditions of this Master Lease with respect to such Equipment. Lessee's or it designated agent's acceptance of delivery of Equipment constitutes a warranty by Lessee that the party accepting such Equipment has the authority to do so on behalf of Lessee.

### 2) TERM OF MASTER LEASE AND EQUIPMENT LEASE TERM

The term of this Master Lease shall commence on the date hereof, and continue thereafter until terminated in the manner set forth in this Master Lease. Notwithstanding the termination of this Master Lease, all Equipment then leased by Lessee shall continue to be subject to the terms, conditions and covenants contained in this Master Lease, and the Equipment Schedules to this Master Lease, until each of such terms, conditions and covenants has been fulfilled, and no such termination affect such rights or obligations.

### 3) PAYMENT OF RENT, LEASE TERM.

a) Commencing on the Delivery Date of each piece of Equipment, Lessee agrees that Lessee's obligation to pay rent and other amounts (the "Lease Payment") hereunder with respect to such Equipment are irrevocable, independent, absolute and unconditional. Lessee shall not be entitled to any abatement or reduction of, or set-off against, such amounts for any reason whatsoever. This Master Lease shall not terminate nor shall the obligations of Lessee be affected by reason of any defect in, damage to or loss of possession, use or destruction of any Equipment from whatsoever cause, or for any other reason, unless such obligations have been terminated pursuant to the express terms hereof.

b) The lease term for such Equipment shall be the period specified in the Equipment Schedule covering such Equipment, commencing on the first day of the month following the Delivery Date thereof, and expiring at the end of such period unless this Master Lease or the Equipment Schedule applicable to such Equipment have been earlier terminated pursuant to its terms. However, Lessor and Lessee may agree in writing to any other payment schedule, including irregular payments as may be set forth in an Equipment Schedule or an addendum thereto and signed by both Lessee and Lessor.

**EXHIBIT C**

c) The period between the Delivery Date and the first day of the month following the Delivery Date is the interim period and are subject to a proration of rent known as "Interim Rent." Interim Rent, if any, shall be defined on an Equipment Schedule and Lessee agrees to its obligation to pay such Interim Rent is the same as its obligation to pay the Lease Payment as set forth within this Section 3.

d) The Lease Payment shall be paid in full at the address of Lessor described on the first page of this Master Lease. Lessor shall accept payment by check or electronic funds transfer ("EFT"). Should any check or EFT from Lessee be returned or dishonored on account of insufficient funds or claw back, Lessee must pay that Lease Payment by cashier's check, teller's check, wire transfer, or other certified funds and also all future Lease Payments thereafter. Upon each and every returned or dishonored check from Lessee, Lessor shall be entitled to assess against Lessee a fee in the amount of $50.00, which shall not be a penalty or liquidated damages but shall be compensation for Lessor's internal administration of collection. The Lease Payment shall first be applied to any Additional Charges (as defined herein) incurred by Lessee prior to being applied to any due or past due Monthly Rental Payment.

4) **ADDITIONAL CHARGES**. In addition to any Lease Payment, Advance Payment or Security Deposit specified herein, Lessee shall pay all additional charges due at any time hereunder (each an "Additional Charge"), including without limitation all taxes, fees, fines, Late Charge (as defined below) and/or charges for any repair, alteration, special equipment, painting, lettering or other costs associated with the Equipment advanced to or paid by Lessor on Lessee's behalf.

5) **SETOFF**. Lessor and Lessee agree that the Lease Payment and other amounts payable by Lessee this Master Lease or an Equipment Schedule, shall continue to be payable in all events, unless the obligation to pay the same are terminated pursuant to the express provisions of this Master Lease or an Equipment Schedule. Any Equipment Schedule under this Master Lease is non-cancellable and Lessee's obligation to pay any and all amounts due under the terms hereof promptly and when due are absolute and unconditional, and are not subject to cancellation, termination, withholding, reduction, modification, or repudiation by Lessee and shall be paid and performed by Lessee without notice or demand and without an abatement, reduction, diminution, setoff, defense, counterclaim, or recoupment whatsoever.

6) **LATE CHARGE**. If Lessee fails to timely pay any Lease Payment in full when due, Lessor may charge, and Lessee hereby agrees to pay, in addition to the Rent, late charge of $50.00 ("Late Charge"). This Late Charge is in addition to and not in limitation of any other rights and remedies of Lessor, and it may be assessed in each instance that Lease Payment is not timely within ten (10) days of the Due Date.

7) **SECURITY DEPOSIT; EQUIPMENT CONDITION ON RETURN FOR TRACTORS**. Lessee shall pay Lessor a Security Deposit for the Equipment in the amount specified in the corresponding Equipment Schedule. The Security Deposit shall be held by Lessor as security for the full and faithful performance by Lessee of all the terms, conditions and provisions of this Master Lease and the associated Equipment Schedule(s). Lessor may apply the Security Deposit toward any obligation or default by the Lessee on this Master Lease or any Equipment Schedule. In the event of early buyout, the Security Deposit shall be included in buyout quote. No Security Deposit shall be refunded if the Equipment is returned prior to end of scheduled Term. The funds of such deposit may be commingled with Lessor's accounts, and Lessee shall have no right to any interest accrual thereon. The existence of this Security Deposit does not in any way limit or waives any other rights or remedies of Lessor. Lessor shall return the unapplied portion of such Security Deposit to Lessee within 45 days after the expiration or termination of this Master Lease provided (1) no default exists hereunder and (2) Lessee returns the Equipment in "trade term condition" to a location designed by and satisfactory to Lessor at Lessor's sole discretion. The phrase "trade term condition" has the meaning commonly ascribed to it in the industry and includes, but not be limited to the following additional specifications:

a) Cab and Exterior Attachments:
   i) Minor dents, scratches, cracks, road rash and paint deterioration smaller than a credit card are considered acceptable.
   ii) There shall not be aggregate exterior damage, (over and about minor damage previously described) in excess of $250.00 per unit on bumpers, fairings, side extenders or any cab sheet metal.
   iii) Sheet metal shall be free of excessive rust and corrosion.
   iv) There shall be no holes, rock chips, or fractures in windshield.
   v) There shall be no holes, rock chips, or fractures in the sleeper skylight, or cab side glass larger than ¾". One occurrence per piece of glass is considered acceptable so long as the occurrence is not a Department of Transportation violation.

b) Interior/Upholstery:
   i) Cab interior and upholstery shall be in good condition and free of rips, tears, holes, or burns larger than a quarter, with two occurrences per panel or area considered acceptable.
   ii) Cab heater, air conditioner, all gauges, lights, controls and radios shall be as originally installed and in proper operating condition.

c) Decals: All exterior decals shall be removed and the underlying surface shall be in good condition, free of cracks or peeling.

d) Paint: Paint shall be original or equivalent, with normal wear considered acceptable.

e) Tires
   i) All Equipment shall have 14/32" or better remaining tread depth and shall be free of cuts or cracks exposing ply or belt material.
   ii) Steer tires shall be matched original tread (no recaps).
   iii) Drive tires shall be matched tread design per axle and original tread or first or second generation recaps.
   iv) All position casings with highway tread (rib) design are considered acceptable.
   v) Re-grooved tires and tire casings specifically designed for trailer use are not considered acceptable (except on trailers?)

f) Brakes.
   i) Front brake lining shall have 10/32" or greater remaining lining depth.
   ii) Rear brake lining shall have 14/32" or greater remaining lining depth.

**EXHIBIT C**

iii) Brake drums shall not have any portion of the drum missing or any cracks that open upon brake application (hairline heat check cracks on the inside of the drum are acceptable).

**8) SECURITY DEPOSIT; EQUIPMENT CONDITION ON RETURN FOR TRAILERS.** Lessee shall pay Lessor a Security Deposit for the Equipment in the amount specified in the corresponding Equipment Schedule. The Security Deposit shall be held by Lessor as security for the full and faithful performance by Lessee of all the terms, conditions and provisions of this Master Lease and the associated Equipment Schedule(s). Lessor may apply the Security Deposit toward any obligation or default by the Lessee on this Master Lease or any Equipment Schedule. In the event of early buyout, the Security Deposit shall be included in buyout quote. No Security Deposit shall be refunded if the Equipment is returned prior to end of scheduled Term. The funds of such deposit may be commingled with Lessor's accounts, and Lessee shall have no right to any interest accrual thereon. The existence of this Security Deposit does not in any way limit or waives any other rights or remedies of Lessor. Lessor shall return the unapplied portion of such Security Deposit to Lessee within 45 days after the expiration or termination of this Master Lease provided (1) no default exists hereunder and (2) Lessee returns the Equipment in "trade term condition" to a location designed by and satisfactory to Lessor at Lessor's sole discretion. The phrase "trade term condition" has the meaning commonly ascribed to it in the industry and includes, but not be limited to the following additional specifications:

a) **Trailer Return Conditions:**
   i) Minot dents, scratches, cracks, road rash and paint deterioration smaller than a credit card are considered acceptable.
   ii) There shall not be aggregate exterior damage, (over and about minor damage previously described) in excess of $250.00 per unit.
   iii) Sheet metal will be free of excessive rust and corrosion.
b) Decals: All exterior decals will be removed and the underlying surface will be in good condition; free of cracks or peeling.
c) Paint: Paint shall be original or equivalent, with normal wear considered acceptable.
d) Tires/Brakes:
   i) All tires shall have 7/32" or better remaining tread depth and will be free of cuts of cracks exposing ply or belt material
   ii) All position casings with highway tread (rib) design are considered acceptable (no lug or traction type tread design)
   iii) **Re-grooved tires are not acceptable.**
e) Brakes:
   i) All trailers are to be returned with 50% or greater lining depth.
   ii) Brake drums shall not have any portion of the drum missing or any cracks that open upon brake application (hairline heat check cracks on the inside of the drum are acceptable).

**9) TAXES.** To the extent provided in the Additional Charges section of this Lease, and as a component of the Lease Payment, Lessee shall pay the amount specified to cover all license fees, assessments, and sales, use, property, excise and other taxes now or hereafter imposed by any federal, state or local government upon or with respect to this Lease, the Equipment or payments hereunder (excluding only taxes based solely on Lessor's net income) together with any interest or penalties in connection therewith ("Taxes"). Should the amount of the Lease Payment specified to cover Taxes be insufficient to cover any and all Taxes, and then such component of the Lease Payment shall automatically be adjusted, upon notice from Lessor to Lessee of same, as to the amount necessary to cover such Taxes. The Lessee agrees to comply with all state and local laws requiring the filing of any tax returns or any reports relating to the Equipment.

**10) LEASE EXPIRATION/EQUIPMENT RETURN.** Upon expiration of an Equipment Schedule, Lessor shall have the immediate right to possession of the Equipment and to conduct an inspection of the Equipment. Lessee agrees to return the Equipment to a location determined by the sole discretion of the Lessor ("Return Location"). If Lessee fails to return the Equipment to a Return Location as directed by Lessor, Lessee agrees to be responsible and promptly pay upon notification all costs to relocate the Equipment to the Return Location. If the Term has expired and Lessee has not returned the Equipment a full Lease Payment shall be payable without proration for each month or part of a month the Equipment is not returned as directed herein until the Equipment is returned to the Return Location and acknowledged by the Lessor or an agent of the Lessor.

**11) OWNERSHIP, TITLE.** This Master Lease is a true lease only and may not be construed as a contract intended for security or for the sale of the Equipment. Lessee acknowledges that Lessor is the owner of the Equipment, including for Federal income tax purposes. Title at all times shall remain in Lessor's name and Lessee shall at all times defend the title of Lessor from and against any and all claims, liens, encumbrances and legal processes of creditors of Lessee or of others claiming by or through Lessee, and keep the Equipment free and clear from all such claims, liens, encumbrances, and processes. Lessee further agrees that it does not acquire any legal or equitable interest in the Equipment but merely holds the possessory right to use and operate the Equipment, which possessory right shall be forfeited upon the termination or expiration of this Master Lease and/or pursuant to a default hereunder as herein provided.

**12) REPAIR AND MAINTENANCE.**

a) Lessee, at its expense, shall keep and maintain the Equipment in good operating condition and working order, and shall make all necessary repairs and parts replacements to such Equipment. All replacement parts and accessories, including batteries, but excluding minor parts such as oil filters regularly scheduled for replacement, must be genuine manufacturer's parts. Title to all replacement parts shall vest in Lessor upon their incorporation into the Equipment. Lessee shall provide all diesel fuel, oil, lubricants, antifreeze and other fluids required for the proper maintenance, operation and/or protection of the Equipment. Lessee shall not make additions or alterations to the Equipment (excluding replacement of parts as part of ordinary maintenance and/or repair) without Lessor's written authorization.

b) Lessee shall carry out the servicing and maintenance of the Equipment in accordance with the manufacturer's suggested maintenance program, and shall comply with Lessor's and manufacturer's requirements respecting the nature and location of service facilities at which warranty work and service are to be done. Authorized direct dealers of the manufacturer of the Equipment involved shall be automatically deemed to be within these requirements. Lessor shall not be obligated to pay for any washing, parking, garage, highway, or other fees, fines or tolls or liens of any nature that may be incurred in connection with the operation, maintenance or repair of the Equipment.

## 13) OPERATION.

a) Lessee shall permit only properly licensed drivers who possess a valid commercial driver's license and meet all applicable federal and state driver qualifications and motor vehicle safety requirements to operate the Equipment. Lessee shall require them to operate the Equipment with reasonable care and diligence and to comply with standard written instructions or recommendations furnished by the manufacturer of the Equipment covering the operation and maintenance of the Equipment. Also, Lessee shall obtain the driver's license number, state of issuance, other driver qualification information, and residence of each driver of the Equipment and shall maintain this information as a part of Lessee's regular business records.

b) Lessee shall not permit the Equipment to be used in violation of any federal, state or municipal statutes, laws, ordinances, rules or regulations, or contrary to the provision of any applicable insurance policy. Lessee indemnifies and holds Lessor harmless from any and all claims, fines, forfeitures, damages or penalties resulting from violation of such statutes, laws, ordinances, rules, regulations (all of which Lessee shall promptly pay) and from any of Lessor's costs associated therewith. Lessor shall forward to Lessee copies or any notices received by Lessor of claims, fines or other penalties levied in connection with the use of the Equipment.

c) Lessee shall notify Lessor immediately of any and all accidents involving or material damage occurring to the Equipment. Such notice shall be by telephone and in writing and shall include full details of the accident or damage occurrence, and the names and addresses of all parties and witnesses. Lessee shall keep Lessor and the insurer fully informed of all claims, suits or proceedings arising out of any accident or damage occurrence involving the Equipment. Lessee shall forward to the insurer and to Lessor a copy of every demand, notice, summons or other process received in connection with any and all claims, suits or other legal proceedings relating to an accident or damage occurrence involving the Equipment.

d) Upon written notice from the Lessor, the Lessee shall immediately remove, prevent and not allow any driver designated in such notice to operate or drive the Equipment.

e) Except with the written consent of Lessor, the use of the Equipment shall be limited to the continental limits of the United States and Canada.

f) Lessee agrees to hold each driver of the Equipment liable for any damage caused by such driver in breach of the provisions of this Lease, for any willful damage to the Equipment, and for any damages arising from carelessness or negligence of the driver, the payment of which damages the Lessee herewith guarantees to the Lessor.

g) Lessee agrees that it shall not overload nor permit the overloading of the Equipment.

h) Lessor may, at its election, inspect, adjust or repair the Equipment, upon the Lessee's premises or elsewhere, at any and all reasonable times, and the Lessee shall cooperate fully to facilitate such inspections, adjustments, and repairs. However, any such actions by Lessor shall not relieve the Lessee of its obligations to keep and maintain the Equipment in good operating condition and working order.

i) In no event shall the Equipment be operated by any person under the influence of alcohol or narcotics. Lessor shall have the right to cancel this Master Lease with reference to the Equipment if so operated and/or demand that the person so operating the Equipment be forbidden to drive the Equipment.

## 14) INSURANCE, DUTY TO COOPERATE, ASSIGNMENT OF INSURANCE PROCEEDS, ATTORNEY IN FACT.

a) Lessee shall procure and maintain at its own expense i) commercial automobile liability insurance insuring against liability for bodily injury and property damage with a minimum coverage limit of one million dollars ($1,000,000) combined single limit or in an amount required by state or federal government now or in the future which may exceed the stated minimum coverage, and ii) physical damage insurance insuring against loss or damage to the Equipment in an amount not less than the full replacement value of the Equipment and with a deductible satisfactory to Lessor. Lessee shall furnish Lessor with a certificate of insurance evidencing the issuance of policies to Lessee in at lest the minimum amounts required. Lessee shall list Lessor as an additional insured thereunder for the liability coverage and Lessor (or such party as designated by Lessor) as a loss payee for the physical damage coverage. Lessee shall be responsible for the payment of the premium for all such insurance required. Each such policy shall be in such form and with such insurers as may be satisfactory to Lessor, and shall contain a clause requiring the insurer to give to Lessor at least thirty (30) days prior written notice of any alteration in the terms of such policy or the cancellation thereof, and a clause specifying that no action or misrepresentation by Lessee shall invalidate such policy. All insurance shall be primary, without right of contribution from any other insurance carried by Lessor, shall contain waiver of subrogation and "breach of warranty" provisions satisfactory to Lessor, shall provide that all amounts payable by reason of loss or damage to the Unit shall be payable solely to Lessor, unless Lessor otherwise agrees, and shall contain such other endorsements as Lessor may reasonably require. Lessor shall be under no duty to ascertain the existence of or to examine any such policy or to advise Lessee in the event any such policy does not comply with the requirement hereof.

b) Lessee shall pay any deductible and any amounts not covered by insurance payments for damages, loss, or theft to/of the Equipment and for any claims and causes of action arising from the use and operation of the Equipment during the Term.

c) Lessee, its employees and/or its agents, shall comply with all terms and conditions of insurance policies covering the Equipment. All claims, (including bodily injury, property damage, or vehicle damage) are to be reported immediately to both the Lessor and the applicable insurance company. Lessee agrees that it has a duty to cooperate the insurance company(ies) that issued the policy(ies) relative to the Equipment and in the event of loss or damage to the Equipment, Lessee shall within one (1) business day of the event of such a loss or damage, report in person, by telephone or by email, such loss or damage to the Lessor, to the insurance company(ies)

EXHIBIT C

that issued the policy(ies), and to any and all applicable governmental agencies.  Lessee shall furnish such information and execute such document(s) as may be require and necessary to collect the proceeds from the insurance policy(ies).

d)  Lessee assigns to Lessor all proceeds of such insurance, not to exceed the sum of all amounts payable pursuant hereto.  Lessee directs all insurers to pay such proceeds directly to Lessor.

e)  Lessee hereby irrevocably assigns to and appoints Lessor as Lessee's attorney-in-fact to make claim for and receive payment of and execute all documents or checks received in payment of loss or damage under any insurance and all proceeds thereof.

15)  **REPRESENTATIONS AND WARRANTY.** Lessee agrees that it has selected the Equipment based upon its own judgment and disclaims any reliance upon any statements or representations made by Lessor or any persons on Lessor's behalf.  Lessee represents and warrants that this Master Lease constitutes the legal, valid and binding obligation of Lessee, enforceable in accordance with its terms, and in the event the Lessee is a legal entity, the person executing this Master Lease on behalf of the Lessee is authorized to do so. **LESSOR MAKES NO WARRANTY OR REPRESENTATION WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO THE EQUIPMENT AS TO ANY MATTER WHATSOEVER, INCLUDING WITHOUT LIMITATION THE VALUE, DESIGN, CONDITION, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR FITNESS FOR USE OF THE EQUIPMENT. LESSOR SHALL NOT BE LIABLE FOR ANY SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY TYPE OR CHARACTER RESULTING FROM THE USE OR THE INABILITY TO USE, THE MISUSE, OPERATION OR MAINTENANCE OF THE EQUIPMENT BY LESSEE.** So long as no default has occurred and is continuing under this Master Lease, Lessor agrees, to the extent they are assignable, to assign to Lessee, without any recourse to Lessor, any warranty received by Lessor, if any, with respect to the Equipment.

16)  **LOSS, DAMAGE AND THEFT.** Unless otherwise agreed in writing, Lessee hereby assumes all risk of loss, theft, damage or destruction, partial or complete, of or to the Equipment from any and every cause whatsoever commencing with delivery of the Equipment to Lessee, or an agent of Lessee.  Lessee agrees to give prompt written notice to the Lessor in the event of any loss or theft of, or damage or destruction to, the Equipment.  The total or partial destruction of the Equipment or the total or partial loss of use or possession thereof to the Lessee shall not release or relieve the Lessee from any obligation of Lessee under this Master Lease, which in such circumstances shall continue in full force and effect.  In the event of damage of any kind whatsoever to the Equipment, Lessee, at its expense (except to the extent of any proceeds of insurance maintained by Lessee and received by Lessor as a result of such loss, theft, damage or destruction) and at the option of Lessor, shall either (1) place the same in good repair, condition or working order, or (2) replace the same with like kind equipment acceptable to Lessor and in good repair, condition and working order and of equivalent value which shall become property of Lessor and included within the term "Equipment" as used herein, or (3) pay Lessor all unpaid Lease Payments and Additional Charges as may be due to Lessor under this Master Lease or Equipment Schedule as of the date of loss, damage or theft, plus the Stipulated Loss Value.  Such "Stipulated Loss Value" shall be as specified opposite the rental installment period (or date) on Appendix A and shall be immediately due and payable to Lessor after the date of loss damage or theft.  Upon repair or replacement as provided for in clauses (1) or (2) hereof, this Master Lease shall continue in full force and effect.  Upon full payment in good funds as provided in clause (3) hereof, the Master Lease shall terminate as it relates to the specific unit of Equipment affected by the loss, damage and or theft.  This Master Lease shall remain in full force and effect on all other Equipment covered by this Master Lease not affected by loss, damage and or theft.

17)  **DEFAULT AND TERMINATION.** An event of default shall occur if:

a)  Lessee fails to pay any portion of Lease Payment or other outstanding Additional Charges in full on the date due or any other payment due hereunder when due;

b)  Lessee defaults in the performance of any of the terms, conditions or covenants contained herein or in an addendum hereto;

c)  Lessee commits any act of fraud against Lessor;

d)  Lessee or any guarantor of this Master Lease ceases doing business as a going concern, makes an assignment for the benefit of creditor or receives a cease and desist order from any governmental agency;

e)  Lessee or any guarantor of this Master Lease voluntarily files, or has filed against it involuntarily a petition for liquidation, reorganization, adjustment of debt, or similar relief under the federal Bankruptcy Code or any other present or future federal or state bankruptcy or insolvency laws, or a trustee, receiver or liquidator is appointed of all or a substantial part of its assets;

f)  any Lessee or guarantor of this Master Lease dies;

g)  any application, financial or credit information submitted by or on behalf of Lessee proves to have been false or materially misleading when made;

h)  Lessee or any guarantor is in default under any other agreement it may have with Lessor;

i)  any indebtedness Lessee may now or hereafter owe to any affiliate of Lessor is accelerated following a default;

j)  if Lessee is a corporation, more than 50% of the shares of voting stock of Lessee become owned by a shareholder or shareholders who were not owners of voting stock of Lessee on the date this Master Lease began or if Lessee is a limited liability company, more than 50% of the membership interests in the Lessee become owned by a member or members who were not members of Lessee on the date this Master Lease began;

k)  Lessee consolidates with or merges into, or sells all or substantially all of its assets to any individual, corporation, or other entity;

l)  Lessee fails to secure and/or maintain in full force and effect at all times during the Term of the Master Lease adequate insurance as outlined in Section 13, and or/or provide Lessor a certificate of insurance evidencing current coverage under such insurance and naming Lessor or Lessor's assigns as an additional insured and Loss Payee.

18)  **REMEDIES.** Upon the occurrence of any of the events of default set forth in Section 16, Lessor shall have all the rights and remedies provided by this Master Lease or which may be available at law or in equity, all of such rights and remedies being cumulative. Notwithstanding that this Master Lease is a lease and title to the Equipment is at all times in Lessor, Lessor, at its option, shall have all of the rights and remedies of a secured party under the Uniform Commercial Code.  In addition, Lessor, at its option, may:

a) (i) Terminate this Master Lease, with or without notice to Lessee, with respect to any or all of the Equipment under the Master Lease and or any Equipment Schedule associated with this Master Lease, in which event any or all such Equipment shall immediately be delivered, at Lessee's expense, to a location or locations specified by Lessor, or (ii) repossess any or all Equipment hereunder, with or without process of law, or require Lessee to surrender such Equipment to Lessor at a location or locations specified by Lessor, without terminating this Master Lease; and

b) In additional to the foregoing, upon the occurrence of any of the events of default set forth above, Lessee shall pay Lessor damages equal to the sum of any and all unpaid Lease Payments plus all remaining Lease Payments payable through the balance of the Term under this Master Lease along with any unpaid Other Charges including collection costs and attorneys' fees.

c) In the event of repossession, Lessee expressly authorizes Lessor and its agents to enter on any premises where the Equipment may be found for the purpose of repossessing the Equipment, and expressly waives any further interest in the Equipment and any right of action arising out of such entry and repossession. Lessor shall not be liable in damages for any termination pursuant to this paragraph and no termination of this Master Lease by Lessor or repossession of the Equipment shall in any way relieve the Lessee of liability for any sum or sums due or to become due Lessor under the Master Lease, or for any damages which Lessor shall have sustained as a result of any default by the Lessee, including but not limited to the cost of repossession. Lessee agrees to pay any and all costs of repossession together with reasonable attorney fees and costs that grow out of any repossession, suit or suits commenced by Lessor due to any default by Lessee.

d) In case of failure by Lessee to comply with any provision of the Master Lease, Lessor shall have the right, but not the obligation, at its option, to effect such compliance as in Lessor's sole discretion is appropriate, in whole or in part, and all costs, charges, fees and expenses (including reasonable attorney's fees) of Lessor incurred in effecting such compliance shall be immediately due and payable by Lessee. The mention herein of any particular remedy shall not preclude Lessor from any other remedy at law or equity, nor shall the exercise of one remedy preclude the exercise of another.

e) If upon the termination, or breach of this Master Lease, Lessee fails or refuses to return the Equipment to Lessor, upon demand by Lessor, said failure or refusal to return the Equipment shall be considered as a conversion and treated as a theft of the Equipment and Lessor shall have the right to notify and request the appropriate law enforcement authorities to recover same as a stolen equipment.

19) **INDEMNIFICATION.** Lessee shall defend, indemnify and hold harmless Lessor, its parent, subsidiary and affiliated companies and its and their officers and employees, successors and assigns from and against any and all damages, loss, theft, or destruction of any Equipment and against all losses, liabilities, damages, injuries (including bodily injury or death), claims, demands, costs and expenses of every kind and nature, including legal fees and disbursements arising out of directly or indirectly from or in connection with the Lessee's possession, use, maintenance, repair, operation or condition (whether defects are latent or discoverable by Lessor or by Lessee) of the Equipment during the Term of this Master Lease, including, without limitation, actions for negligence or strict liability under the laws or judicial decisions of any state or the United States, and legal expenses in defending any claim brought to enforce any such liability or expense. Lessee agrees to give Lessor prompt notice of any claim or liability hereby indemnified against. Lessee's indemnification obligations as described herein shall survive termination or expiration of this Master Lease.

20) **LESSEE'S DAMAGES.** Lessor shall not be responsible for any loss or damage caused directly or indirectly by (1) the inadequacy of the Equipment for any purpose; (2) any deficiency or defect in the Equipment; (3) the operation, use or performance of the Equipment; (4) any interruption or loss of service, use or performance of the Equipment; or (5) any loss of business or other consequential damage whether or not resulting from any of the foregoing. Lessor assumes no liability or responsibility for any acts or omissions of Lessee or of Lessee's agents, servants or employees, or for any property of Lessee, its agents, servants or employees or any other persons, property that is damaged, lost or stolen in or from the Equipment.

21) **ASSIGNMENT.** WITHOUT LESSOR'S PRIOR WRITTEN CONSENT, LESSEE SHALL NOT SELL, ASSIGN, SUBLET, PLEDGE, OR OTHERWISE ENCUMBER OR PERMIT A LIEN ARISING THROUGH LESSEE TO EXIST ON OR AGAINST ANY INTEREST IN THIS LEASE OR THE EQUIPMENT. Lessor may assign its interest in this Master Lease or sell or grant a security interest in all or any part of the equipment or any Lease Payment or other sum due or become due hereunder without notice to or the consent of Lessee. Lessee agrees not to assert against any assignee or Lessor any claim or defense Lessee may have against Lessor which may arise out of any breach or obligation of Lessor to Lessee.

22) **MISCELLANEOUS.** This Master Lease may be executed in multiple counterparts and constitutes the entire agreement between the parties hereto and shall be binding on their heirs, executors, administrators and their legal representatives, successors and assigns. This Master Lease together with the other documents mentioned herein or executed contemporaneously herewith, constitutes the entire agreement of the parties and Lessor shall not be charged with any agreement or representation not contained in a writing executed by it as provided in this section. No terms or provision of this Master Lease may be amended, altered, discharged, or terminated orally except by an instrument in writing signed by an authorized representative of each party. No forbearance to exercise any right or privilege under this Master Lease or waiver of any breach of any of its terms shall be construed as a waiver of any such terms, rights or privileges, but the same shall continue and remain in full force and effect the same as if no such forbearance or waiver had occurred. Time is of the essence in the performance of this Lease. Captions in this Master Lease are for convenience of reference only and shall not define or limit any of the terms or provisions hereof. The invalidity of any portion of this Master Lease shall not affect the force and effect of the remaining valid portions thereof. Any notice given by one party to the other under this Master Lease shall be given in writing at the address of the other party as set out in this Lease, or at such other address as may have been furnished in writing for such purpose.

23) **GOVERNING LAW, SEVERABILITY, WAIVER OF JURY TRIAL.** This Master Lease shall be interpreted under and governed by the laws of Tennessee. The parties do hereby explicitly select and consent to the jurisdiction of the courts of Hamilton County, Tennessee as the proper venue for the adjudication of any and all matters of controversy that may arise between the parties out of the Lease. If any provisions hereof or the application of any provisions to any person or circumstance is held invalid or unenforceable, the remainder hereof and the application of such provisions to other persons or circumstances shall remain valid and enforceable. THE LESSOR AND THE

**EXHIBIT C**

LESSEE HERBY WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY OR AGAINST EACH OTHER ON, OR IN RESPECT OF, ANY MATTER ARISING OUT OF, RELATING TO OR PERTAINING TO THIS LEASE, THE INTERPRETATION BREACH, ENFORCEMENT OR SUBJECT MATTER THEREOF, THE RELATIONSHIP BETWEEN THE LESSEE AND THE LESSOR AND/OR ANY CLAIM OF INJURY OR DAMAGE FROM ANY OTHER RELATIONSHIP BETWEEN THE PARTIES THERETO.

**24) GENERAL.**

This Master Lease is for the benefit of, and may only be enforced by, the respective parties and their successor and permitted assigns and is not for the benefit of, and may not be enforced by, any third party claiming through Lessee. This Master Lease is the product of negotiations between the parties. Each provision hereof shall be read and interpreted in accordance with its common and ordinary meaning and no ambiguity in language shall be read or interpreted strictly against either party as the drafter thereof. All notices required or permitted under this Master Lease shall be in writing and shall be deemed received if delivered personally to an officer or authorized representative of a party or if sent by certified mail, return receipt requested and postage prepaid, to a party at its address noted above or to such other address for which notice has been given pursuant hereto.

IN WITNESS WHEREOF, the parties hereto have caused this Master Lease to be signed by their duly authorized representatives.

*Lessor: Transport Enterprise Leasing, LLC*

*By:*

*Name:* Jacob Brazier
*Title:* VP of Fleet Leasing
*Date:* 02/01/2020

*Lessee: Merging Express, LLC*

*By:*

*Name:* Jason DeSanto
*Title:* President
*Date:* 02/01/2020

EXHIBIT C



TRANSPORT ENTERPRISE LEASING LLC

Corporate Guaranty Addendum

Equipment Lease Number: 101182

This Corporate Guaranty Addendum ("Guaranty") creates specific legal obligations in reference to the Commercial Equipment Master Lease, dated 02/01/2020 between Merging Express, LLC (Lessee) and Transport Enterprise Leasing, LLC (Lessor) together with all attachments and accessories thereto (the "Lease") with respect to the units outlined in Exhibit A (the "Equipment").

For consideration, the receipt and sufficiency of which is hereby acknowledged and to induce the Lessor to enter into the Lease, **Capital Trucking, Inc.**, the undersigned Guarantor unconditionally and irrevocably guarantees to Lessor, Lessor's successor and assigns, the prompt performance of all of Lessee's obligations under the Lease including, without limitation, payment of all amounts owing by Lessee under the terms and conditions of the Lease, along with any and all modifications, addendums, or amendments thereto. Guarantor covenants to make the payments as they become due under the Lease, regardless of whether Lessee has made payment to Lessor or performed Lessee's contractual obligations to Lessor. The execution and delivery of this Guaranty is a requirement of Lessor entering into the Lease, and Guarantor represents that Guarantor will derive benefit from Lessee having access to the Equipment under the Lease. Guarantor further agrees to guarantee to Lessor the prompt performance of any and all other lease obligations, modifications, addendums, or amendments Lessee may have outstanding with Lessor at the time of the execution of this Guaranty as well as any and all other lease obligations Lessee may owe to Lessor at any time in the future.

When the payments become due, the Guarantor promises to pay the entire amount owing under this Lease or any other obligations owed by Lessee to Lessor in the form of weekly settlement payments as outlined in the Lease, or any Equipment Schedule, modifications, addendums, or amendments thereto, along with any other lease obligations, modifications, addendums, or amendments thereto Lessee may have with Lessor to Lessor, whether Lessee is or is not in default pursuant to the terms of the Lease. Guarantor agrees that this is a guaranty of payment and not of collection and that Lessor is not required to make demand upon or to collect from Lessee, against the Equipment or any other remedy available to Lessor prior to making a claim under this Guaranty.

Lessor shall give Guarantor ten (10) days' notice prior to commencing suit under this Guaranty; such notice shall be sent via first class, U.S. Mail addressed to the individual executing this Guaranty on behalf of Guarantor, or to such other person as Guarantor may direct, in a writing provided to Lessor to the attention of the person listed on the signature page of the Lease. The undersigned waives any notice to which it is otherwise entitled and agrees to continue to be bound by this Guaranty even if the Lease is extended, renewed, modified, compromised, or assigned.

**THIS GUARANTY IS GOVERNED BY THE LAWS OF THE STATE OF TENNESSEE. GUARANTOR AND LESSOR EXPRESSLY AND IRREVOCABLY WAIVE ALL RIGHT TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTY OR THE TRANSACTIONS CONTEMPLATED HEREBY.**

GUARANTOR
Capital Trucking, Inc.

By: _____

Name: Jason DeSanto _____

Title: President _____

Date: 02/01/2020 _____

ACKNOWLEDGED:
TRANSPORT ENTERPRISE LEASING, LLC

By: _____

Name: Jacob Brazier _____

Title: VP of Fleet Leasing _____

Date: 02/01/2020 _____

**EXHIBIT C**



TRANSPORT ENTERPRISE LEASING LLC

Personal Guaranty
Addendum

Equipment Lease Number: 101182

This Personal Guaranty Addendum (this "Guaranty") creates specific legal obligations in regard to the Commercial Equipment Master Lease, commencing on 2/1/2020 between Merging Express, LLC ("Lessee") and Transport Enterprise Leasing, LLC ("Lessor") together with all attachments and accessories thereto (the "Lease").

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged and to induce the Lessor to enter into the Lease, the undersigned ("Guarantor"), unconditionally and irrevocably guarantees to Lessor, and Lessor's successor and assigns, the prompt performance of all of Lessee's obligations under the Lease, including, without limitation, payment of all amounts owing by Lessee under the terms and conditions of the Lease, along with any and all modifications, addendums, or amendments thereto. Guarantor covenants to make the payments as they become due under the Lease. The execution and delivery of this Guaranty is a requirement of Lessor entering into the Lease, and Guarantor represents that Guarantor will derive benefit from Lessee having access to the Equipment under the Lease. Guarantor further agrees to guarantee to Lessor the prompt performance of any and all other lease obligations, modifications, addendums, or amendments Lessee may have outstanding with Lessor at the time of the execution of this Guaranty as well as any and all other lease obligations Lessee may owe to Lessor at any time in the future.

When the payments become due, the Guarantor promises to pay the entire amount owing under this Lease or any other obligation owed by Lessee to Lessor in the form of monthly or weekly payments as outlined in the Lease, or any Equipment Schedule, modification, addendums, or amendments thereto, along with any other lease obligations, modification, addendums, or amendments thereto Lessee may have with Lessor , whether Lessee is or is not in default. Guarantor agrees that this is a guaranty of payment and not of collection and that Lessor is not required to make demand upon or to collect from Lessee, against the Equipment or any other remedy available to Lessor prior to making a claim under this Guaranty.

Lessor shall give Guarantor ten (10) days' notice prior to commencing suit under this Guaranty; such notice shall be sent via first class, U.S. Mail addressed to Guarantor, or to such other person as Guarantor may direct, in a writing provided to Lessor to the attention of the person listed on the signature page of the Lease. Guarantor waives any notice to which it is otherwise entitled and agrees to continue to be bound by this Guaranty even if the Lease is extended, renewed, modified, compromised, or assigned.

**THIS GUARANTY IS GOVERNED BY THE LAWS OF THE STATE OF TENNESSEE. CARRIER/GUARANTOR AND LESSOR EXPRESSLY AND IRREVOCABLY WAIVE ALL RIGHT TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTY OR THE TRANSACTIONS CONTEMPLATED HEREBY.**

GUARANTOR
By: _____

Name: __Jason DeSanto_____

Title: __INDIVIDUALLY_____

Date: __2/1/2020_____


ACKNOWLEDGED:
TRANSPORT ENTERPRISE LEASING, LLC

By: _____

Name: __Jacob Brazier_____

Title: __VP of Fleet Leasing_____

Date: __2/1/2020_____

4834-7236-9297, v. 3